UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JAMES WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-297-GMB |
| ) | |
| MARTIN O'MALLEY, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION</u>**

On May 24, 2021, Plaintiff James White filed an application for a period of disability and disability insurance benefits ("DIB") with an alleged disability onset date of August 31, 2020. On February 27, 2023, White amended his alleged onset date to September 1, 2021. White's application was denied at the initial administrative level and upon reconsideration. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephone hearing on April 17, 2023, and denied White's claims on August 23, 2023. White requested a review of the ALJ's decision by the Appeals Council, which declined review on January 8, 2024. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner") as of January 8, 2024.

White's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil

Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 21. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the [Commissioner's] factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI"). However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 374–75 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  White bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?
> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than [at] step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

## III. RELEVANT FACTUAL BACKGROUND

White was 50 years old on the alleged disability onset date. R. 187, 202. His primary complaints are pain when moving his right shoulder and both knees, ghost pain from the amputation of his pinky finger, depression, anxiety, and sleeplessness. R. 46–48. In his disability report, White alleged the following medical conditions: right shoulder surgery, post-traumatic stress disorder ("PTSD"), insomnia, osteoarthritis in his right shoulder, anxiety, depression, gallbladder removal, restless leg syndrome, left hand partial amputation, and sleep apnea. R. 213. He has a high school education, and he has 13 years of work experience as a truck driver. R. 214.

At the hearing, White testified about his limitations and daily activities. He said that he cannot move his right arm above his head without pain and joint popping. R. 46. He can stand for up to 20 minutes to wash dishes, walk up to a mile, and carry

up to 25 pounds. R. 48–49.  White lies down for four to five hours per day. R. 50–51.  He also has ghost pains in his left hand, night terrors, and post-traumatic stress disorder that often prevent him from sleeping deeply at night. R. 47–48.  White does not live by himself. R. 49–50.  He can drive and do light yardwork. R. 50.  He has no issues with performing personal care and personal hygiene. R. 255.  He prepares simple meals, handles money, and attends church weekly. R. 256–58.

White submitted medical evidence from various sources.  White received treatment at the Orthopedic Center for a right shoulder injury.  In January 2021, he had right shoulder decompression and an AC joint resection because of a 30 percent tear in his right shoulder. R. 361, 372–73, 566.  Sarah Jean, a nurse practitioner, completed a Disability Determination Evaluation on September 8, 2021. R. 563–68.  White reported his shoulder pain as a 3 out of 10 in severity. R. 566.  Jean listed White's primary physical symptom as chronic and constant shoulder pain. R. 563.  She measured White's range of motion and determined he had a normal range of motion except for the forward elevation of his right shoulder, which was 30 degrees below normal. R. 567–68.  Jean also stated that White could perform basic mobility tasks for employment but not sustained heavy physical labor. R. 566.

In October 2021, White returned to the Orthopedic Center. R. 659–64.  The medical records show he had "pretty good range of motion" but tenderness at the last 10 to 15 degrees of external rotation. R. 659.  On examination, White did not

appear in any distress and was alert and oriented. R. 660.  He had "some pain with Speed testing" and the provider noted that "it is more of an external rotation issue." R. 660.  The provider also noted that White's right shoulder x-rays "look[ed] great" with "[n]ice decompression and AC joint resection." R. 660.  White had a right shoulder injection and the provider ordered physical therapy. R. 660–61, 664.

Marla Byrum, a nurse practitioner, completed a Disability Determination Evaluation on August 8, 2022. R. 838–47.  Byrum listed White's subjective symptoms in detail, including radiating shoulder pain, sharp phantom pains in the hand that suffered amputation, knee pain exacerbated by activity, restless leg syndrome, insomnia, anxiety, and PTSD. R. 838.  On examination, White was alert and oriented, and he did not appear to be in distress. R. 840–41.  His upper extremities appeared grossly normal and symmetrical, with no swelling, redness, or heat. R. 841. White was able to make a fist, touch his thumb to his fingers, use a button, tie his shoelaces, pick up small objects, and turn a doorknob. R. 841.  But Byrum did note that White appeared to be in pain when moving his right shoulder during the range-of-motion exam, where he had a limited range of motion. R. 841. White exhibited 5/5 strength in his upper extremities although his strength decreased to 4/5 after "repetitive exercise of the right arm." R. 841.  Byrum also noted that White was able to squat but that his knees popped when standing back up. R. 841. Byrum concluded that it would be difficult for White to stand for extended periods

of time, work over his head, or lift heavy objects. R. 842.

Dr. Jack Bentley, Jr. completed a Disability Determination Evaluation on August 3, 2022. R. 833–35.  Bentley's diagnostic impressions were chronic PTSD, depressive disorder with anxiety, psychological problems, and chronic pain disorder. R. 834.  Bentley offered the opinion that White would have limitations in his ability to sustain complex work activities, but that his impairment for simple tasks would fall in the moderate range. R. 835.

The ALJ issued his decision on August 23, 2023. R. 31.  Under step one of the five-step evaluation, he found that White had not engaged in substantial gainful activity since September 1, 2021, the alleged onset date. R. 16.  At step two, the ALJ concluded that White suffers from the severe impairments of osteoarthritis, trauma and stressor disorder, disorder of muscle ligament, personality disorder, and depressive disorder with anxiety. R. 16.  The ALJ noted that these medically determinable impairments cause significant limitations in White's ability to perform basic work activities. R. 17.  The ALJ determined that White's impairments of obesity, obstructive sleep apnea, gastritis, and duodenitis are not severe. R. 17.  At step three, the ALJ found that White does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 17–19.

Before proceeding to the fourth step, the ALJ determined that White had the

residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). R. 19.  More specifically, the ALJ found that White has the following limitations with respect to light work:

> [N]o driving; no climbing of ladders, ramps, ropes, scaffolds, occasional climbing of stairs, stooping, crouching, kneeling, crawling, no operation of hazardous or vibrating machinery; constant to frequent bilateral upper extremity reaching, and little to no overhead reaching. He can understand, remember, carry out, simple, routine tasks involving one or two step instructions for two-hour periods.  He should have minimum work related changes, no contact with the general public and occasional contact with co-workers and supervisors.

R. 19.  At the fourth step, the ALJ determined that White is unable to perform any past relevant work. R. 29.  At the fifth step, the ALJ considered White's age, education, work experience, and RFC in determining that there are jobs that exist in significant numbers in the national economy that White can perform, including work as a laundry worker, inspector, and housekeeper. R. 29–30.  Therefore, the ALJ concluded that White was not under a disability as defined by the Social Security Act from September 1, 2021, through the date of decision. R. 30.  Based on these findings, the ALJ denied White's application. R. 30.

## IV.  DISCUSSION

White makes two arguments in favor of remand.  First, he claims that the ALJ lacked substantial evidence to conclude that his obstructive sleep apnea is a non-severe impairment. Doc. 17 at 6.  Second, White argues that the ALJ lacked substantial evidence to conclude that his RFC permits him to do light work with

limitations. Doc. 17 at 11.  The court addresses each of these arguments below.

**A.     Sleep Apnea**

White argues that the ALJ's determination that his obstructive sleep apnea is a non-severe impairment was not supported by substantial evidence. Doc. 17 at 6–11.  The court disagrees.

A severe impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).  The finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as "severe," is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  Where a claimant alleges several impairments, the Commissioner must consider the impairments in combination and determine whether they combine to render the claimant disabled. *Jones v. Dept. of Health & Human Servs*., 941 F.2d 1529, 1533 (11th Cir. 1991). Importantly, an ALJ's statement that he has considered a combination of impairments meets this standard. *Id*.

The court does not need to consider whether the ALJ erred when he decided that White's sleep apnea was not a severe impairment.  "Any error at step two was harmless because the ALJ found in [the claimant's] favor as to impairment, and the ALJ properly noted that he considered [the claimant's] impairments in the later steps." *See Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir.

2015). Although the ALJ determined that White's obstructive sleep apnea is non-severe, he also determined that White has several other severe impairments and in later steps explicitly considered all of White's impairments—including his sleep apnea—in combination. R. 16–29. For this reason, any error was harmless. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[E]ven assuming [the claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.").

## B.    RFC Determination

White next argues that the ALJ's determination that he has the RFC to perform a range of light work with certain limitations was not supported by substantial evidence.[2] Doc. 17 at 11–17. In particular, White argues that the ALJ erred in his (1) selective evaluation of the evidence of White's physical limitations due to his shoulder pain (Doc. 17 at 12–13); (2) determination of White's mental RFC by giving improper weight to isolated medical records (Doc. 17 at 13–14); and (3) failure to discuss several of White's allegations about his daily activities. Doc. 17 at 14–16. The court disagrees with each argument.

---

[2] Although White also claims that the ALJ's RFC determination was not consistent with the appropriate legal standards (Doc. 17 at 11), his brief does not make any argument in support of this statement. *See* Doc. 17 at 11–17. The court therefore finds that White abandoned this argument. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party "abandons a claim when he either makes only passing reference to it or raises it in a perfunctory manner without supporting arguments and authority").

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545. An ALJ must articulate "explicit and adequate reasons" for discounting subjective testimony about a claimant's pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A reviewing court will not disturb an ALJ's credibility finding if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

### 1.    *Shoulder Pain*

Substantial evidence supports the ALJ's RFC determination as to White's shoulder. White argues that the ALJ focused on a "snapshot" of his treatment notes instead of the entire picture of his shoulder limitations, and he specifically contends that the ALJ did not properly consider the October 2021 records related to his shoulder from the Orthopedic Center. Doc. 17 at 13. The court disagrees.

First, although White may disagree with the ALJ's conclusions about his shoulder pain, substantial evidence supports the decision. The ALJ repeatedly referenced the October 2021 visit but found that it did not substantiate White's allegations of disabling limitations to his shoulder. R. 20 & 25. In so finding, the ALJ credited multiple medical visits and reports, including the entries from the October 2021 visit that noted White had a "pretty good range of motion" despite tenderness during rotation. R. 659. And White's x-rays showed "[n]ice decompression and AC joint resection." R. 660.

12

The ALJ also discussed White's complaints of shoulder pains during Nurse Byrum's examination in August 2022, including his tenderness on palpation of the anterior and AC joint of the right shoulder and limited range of motion in the right shoulder. R. 24, 841. The ALJ noted that White had 5/5 strength in the upper extremities although his strength decreased to 4/5 after "repetitive exercise of the right arm." R. 24, 841.

With this medical support, the ALJ gave some credence to White's complaints and incorporated limitations related to his shoulder issues into the RFC determination. R. 19. Specifically, the ALJ imposed the limitations of no constant to frequent bilateral upper extremity reaching and little to no overhead reaching. R. 19, 46. But he also explained that White's opinions about his limitations were not entirely consistent with the medical evidence and his report of daily activities. R. 25.

At its core, White's argument asks the court to reweigh the evidence about his shoulder pain. The court declines to do so. It is the court's job to review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. § 405(g)). "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The court "will not decide facts anew, make

credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)); *see Thomason v. Soc. Sec. Admin., Comm'r*, 2021 WL 4061423, *7 (N.D. Ala. Sept. 7, 2021) (holding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court"). For these reasons, the court finds that substantial evidence supports the ALJ's findings about White's RFC related to his shoulder pain.

### 2.    *Limitations in the Ability to Concentrate, Persist, and Maintain Pace*

Substantial evidence supports the ALJ's determination of White's RFC as to his ability to concentrate, persist, and maintain pace. "[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for" a rating of "moderate" difficulties in maintaining concentration, persistence, or pace. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011). An ALJ may "specifically account" for special technique ratings, including a rating of "moderate" difficulties in maintaining concentration, persistence, or pace, by means other than an explicit recitation of the ratings. *Id*. at 1181; *see also, e.g.*, *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. 15 App'x 604, 612 (11th Cir. 2015) (affirming ALJ's decision that claimant could engage in simple non-detailed tasks

14

despite a moderate limitation in concentration, persistence, and pace).

Here, the ALJ found that White had a moderate limitation in his ability to concentrate, persist, and maintain pace. R. 18–19.  The ALJ accounted for this limitation in his RFC determination in finding that White can understand, remember, and carry out routine tasks involving one- or two-step instructions for two-hour periods. R. 19.  In making this determination, the ALJ credited psychotherapy reports that White frequently was distractible or had a flat affect. R. 545, 547, 570, 700, 810, 816.  The ALJ, however, balanced this evidence against medical records that routinely noted White was fully oriented, attentive, and had good concentration and judgment. R. 709, 878, 910, 932, 936, 940.  The ALJ also found persuasive Dr. Bentley's opinion that White has limitations related to communication and sustaining complex tasks, and these opinions factored into the ALJ's RFC determination of White's mental status. R. 28.  For these reasons, substantial evidence supports the ALJ's determination that White has a moderate limitation in his ability to concentrate, persist, and maintain pace.

### 3.    *Limitations in Daily Activities*

Finally, substantial evidence supports the ALJ's determinations about White's daily activities.  White argues that the ALJ failed to consider White's reported limitations when he found that White's daily activities "undermine assertions of a complete inability to perform substantial gainful activity." Doc. 17 at 14–17; R. 27.

In particular, White charges the ALJ with omitting White's limitations in driving, performing yardwork, and preparing full meals. Doc. 17 at 15.

The courts finds that the ALJ properly considered White's daily activities. First, White is incorrect that the ALJ did not consider a driving limitation—the ALJ included "no driving" as a limitation in White's RFC determination. R. 19. Second, the ALJ referenced White's other reports about his daily activities. For instance, the ALJ specifically noted that White was "able to help with" cooking and yardwork. R. 19, 27. The ALJ also considered White's report that he attended church on most weekends and completed daily activities without assistance. R. 27.

Moreover, it is unclear how any additional consideration of White's limitations in daily living would affect the ALJ's RFC determination. The ALJ found persuasive Dr. Bentley's opinion that White has marked to severe limitations in his ability to sustain complex tasks and moderate limitations in his ability to perform simple tasks. R. 28. The ALJ incorporated RFC limitations based on this opinion and specifically noted that Dr. Bentley's opinion was consistent with the limitations in White's daily activities. R. 28. Therefore, substantial evidence supported both the ALJ's determination that White's daily activities undermine his claim of complete disability and the ALJ's reliance on White's daily activities in crafting his RFC limitations.

Ultimately, the burden of proving disability always rests with White. *See* 20

16

C.F.R. § 404.1512; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). "Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports h[is] position; []he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017); *accord Preston v. Comm'r Soc. Sec. Admin.*, 748 F. App'x 268, 271 (11th Cir. 2018) ("[T]hat some evidence supports a disability determination does not cast doubt on the propriety of the ALJ's decision[.]"). And even if the court disagrees with the ALJ's resolution of the factual issues and would resolve those disputed factual issues differently, the ALJ's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).

## V. CONCLUSION

For these reasons, substantial evidence supports the Commissioner's decision, and it is based on the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on January 14, 2025.

_____

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE